IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                                              Cause No. 16-2687 MCA

CHRISTIAN BEGAY,

    Defendant.

**UNITED STATES' MOTION *IN LIMINE*
REGARDING 404(b) EVIDENCE**

The United States of America, through its undersigned counsel, hereby requests this Court enter an Order allowing the United States to reference to the defendant's previous conduct on March 9, 2016, when he discharged a firearm at the residence of Melvin Lee and Kristina Carrillo, in its case-in-chief. In the alternative, the United States seeks admission of this evidence should the Defendant attempt to raise any defense in any case before this Court that challenges the Defendant's identity, motive, opportunity, intent, or knowledge, or any defense which alleges a mistake or accident on the part of the defendant at any point during the proceedings. As grounds for its request, the United States relies on the following points and authorities, and any testimony elicited on the matter.

**I.    OUTLINE OF EVENTS.**

    A.    <u>Events of March 9, 2016</u>.

On March 9, 2016, the defendant and a co-defendant were arrested by tribal authorities for firearms possession. Law enforcement was called to the residence of Melvin Lee, located

in the South Non-Profit Housing, as a result of shots being fired. Upon the arrival of law enforcement, two individuals were detained when they exited the residence. The two were identified as Lydell Hogue and Melvin Lee. Lee told officers he was the owner of the residence. Lee indicated Christian Begay and Lydell Hogue came to the residence looking for Kristina Carrillo, who also resides there. Lee stated Begay was still in the residence with his granddaughter, Brianna Bahe. Bahe was located inside the residence in a wheelchair. Law enforcement located Begay hiding beneath a bed. Once Begay was handcuffed, a search of his person revealed two knives, binoculars and a pipe. Law enforcement began to search for a weapon. Lee informed officers that the firearm was possibly located in the cushions of the couch, as Lee had seen Begay near the couch. Lee indicated he saw Begay removing the magazine of the firearm, but did not see where the firearm was hidden. With Lee's permission, law enforcement removed the handgun and magazine from beneath the cushions.

Officers then interviewed Boyd Smith. Smith stated that Begay and Hogue were not invited to the residence. Begay argued with Smith. Boyd stated that Begay got a chain which he wrapped around his fist. Boyd picked up some rocks to defend himself. Begay then stated he would return with his gun. Boyd hid behind a truck as four shots rang out. Law enforcement located three casings in the area of the home. A fourth was located in an RV on the property. An inventory search of the vehicle used by Begay and Hogue revealed four boxes of ammunition matching the caliber of the firearm used by Begay.

B. <u>Events of May 21, 2016</u>.

On May 21, 2016, at approximately 10:00 pm, a dark blue-colored sport utility vehicle ("SUV") pulled up in front of a residence located at South Non-Profit Housing #1036 in

Shiprock. The driver of the vehicle, identified as Christian Begay ("Begay"), approached the residence and initiated a conversation with Rochelle Charley, and demanded to speak to Norman George. Norman George saw Begay coming toward his residence and did not want to speak to Begay. George went inside of a storage unit at #1036 and overheard Begay speaking with Charley just outside the residence. Begay, while remaining in the driver's seat of the blue-colored SUV, told Charley that Norman George owed him $30 and subsequently pointed a black-colored handgun at Charley, demanding to speak to Norman George. Charley said that she feared for her life and recognized Begay to be under the influence of methamphetamine, based on her previous encounters with him. Charley then went inside the residence at #1036 and told June George, the mother of Norman George, about Begay's demands to speak to Norman George.

June George then exited the residence and spoke with Begay regarding the alleged debt owed. June George offered to pay Begay the money owed; however, Begay responded abruptly and told June George that he did not want her money, but wanted Norman George to pay him the money.

Norman George then exited the storage unit and confronted Begay regarding the alleged debt. A verbal argument ensued and Begay remained inside of the blue-colored SUV. During the argument, Begay brandished a black-in-color handgun from the vehicle and fired approximately two rounds, hitting Norman George in the torso. Begay then fled the scene in the blue-colored SUV at a high rate of speed.

Norman George was taken to Northern Navajo Medical Center and subsequently transported to the San Juan Regional Medical Center ("SJRMC") for treatment due to the severity of the injury. Medical staff at the SJRMC confirmed that Norman George suffered a

gunshot wound causing severe damage to his pelvic bone and as a result, remains at the SJRMC for treatment.

A search of the crime scene was conducted by Investigative Agents, which yielded two spent 10 millimeter shell casings located on the ground outside of #1036 and one bullet lodged in the exterior wall of the same residence. Nearby neighbors recalled hearing two loud noises in the evening of May 21, 2016, which were described as gunshots. Neighbors also recalled hearing and seeing a male individual lying on the ground outside of #1036 screaming that he had just been shot and observed a dark SUV drive away from #1036 at a high rate of speed a short time after hearing the gunshots.

Begay was identified by Rochelle Charley, June George and Norman George. Begay is the nephew of June George and the cousin of Norman George.

In this trial, the United States requests that it be allowed to put forth in its case-in-chief, the Defendant's other bad acts occurring on March 9, 2016. The United States contends that the incidents outlined above where the defendant possessed and discharged firearms within a two-month period are so similar in nature so as to show motive, opportunity, intent, knowledge, identity, absence of mistake, or lack of accident on the part of the defendant, and are properly admissible pursuant to Federal Rule of Evidence 404(b).

## II.   LEGAL ARGUMENT.

Federal Rule of Evidence 404(b) authorizes the admission of other crimes, acts and wrongs to prove, among other things, motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. *See* Fed.R.Evid. 404(b). Evidence is properly admitted under Rule 404(b) if four requirements are met: (1) the evidence is offered for a proper purpose under Fed.R.Evid. 404(b); (2) the evidence is relevant under Fed.R.Evid.

401; (3) the probative value of the evidence is not substantially outweighed by its potential for unfair prejudice under Fed.R.Evid. 403; and (4) the district court, upon request, instructs the jury, pursuant to Fed.R.Evid. 105, to consider the evidence only for the purpose for which it is admitted. *United States v. Becker*, 230 F.3d 1224 (10th Cir. 2000) (citing *Huddleston v. United States*, 485 U.S. 681 (1988)).

"Rule 404(b) admissibility is a permissive standard and if the other act evidence is relevant and tends to prove a material fact other than the defendant's criminal disposition, it is offered for a proper purpose under Rule 404(b) and may be excluded only under Rule 403." *United States. v. Davis,* 636 F.3d 1281, 1298 (10th Cir.2011)(internal quotation marks omitted). "We have consistently recognized the probative value of uncharged acts to show motive, intent, and knowledge, ... as long as the uncharged acts are similar to the charged crime and sufficiently close in time." *Id.* (internal quotation marks omitted). "The threshold inquiry a court must make before admitting similar acts evidence under Rule 404(b) is whether that evidence is probative of a material issue other than character." *Huddleston,* 485 U.S. at 686, 108 S.Ct. 1496.

    A.    <u>Evidence Offered for Proper Purpose</u>.

In proving the charges against the defendant, the United States must show that the Defendant knowingly and intentionally discharged a firearm. Moreover, based upon the Notice of Alibi Witness filed by the Defendant, (Doc. 27), the identity of the Defendant will be at issue. In cases involving the possession of firearms, evidence of other instances of the defendant's possession of firearms on other occasions, close in time, is admissible to show motive, identity, knowledge, intent or lack of mistake or accident*. See United States v. Shumway*, 112 F.3d 1413, 1421 (10th Cir.1997) (previous acts evidence has been admitted in the Tenth Circuit so long as the requirements of Rule 404(b) are met). All of these theories are likely to be at issue in this

case. *See United States v. Record*, 873 F.2d 1363, 1373 (10th Cir.1989) (citing *United States v. Kendall*, 766 F.2d 1426, 1436 (10th Cir.1985), *cert. denied*, 474 U.S. 1081 (1986)); *United States v. Sturmoski,* 971 F.2d 452, 459 (10th Cir.1992) (When defendant's knowledge is at issue, admissibility of prior acts is appropriate to prove knowledge, intent or motive); *United States v. Delay,* No. 03–40055–01–SAC, 2004 WL 433808, at *2 (D.Kan. Feb. 6, 2004) (Knowledge is at issue when a defendant denies participation in and awareness of a criminal act).

For admissibility under Rule 404(b), there also must be sufficient evidence to support a jury finding that the defendant committed the other acts. *See United States v. Johnson*, 934 F.2d 936, 940 (8th Cir. 1991). Uncorroborated testimony of a witness is sufficient to satisfy the clear and convincing requirement that the defendant committed the other bad acts. *See United States v. Trevino*, 565 F.2d 1317, 1319 (5th Cir. 1978). There is substantial evidence of the acts occurring on March 9, 2016. Moreover, evidence admitted under Rule 404(b) may relate to conduct occurring either before or after the charged offense. *Davis*, 636 F.3d at 1298; *United States v. Mares,* 441 F.3d 1152, 1157 (10th Cir.2006) (It is settled in the Tenth Circuit that evidence of 'other crimes, wrongs or acts' may arise from conduct that occurs after the charged offense).

"[W]hen other-act evidence is admitted for a proper purpose and is relevant, it may be admissible even though it has 'the potential impermissible side effect of allowing the jury to infer criminal propensity.' " *United States v. Moran,* 503 F.3d 1135, 1145 (10th Cir.2007) (quoting *United States v. Cherry,* 433 F.3d 698, 701 n. 3 (10th Cir.2005)). The government must articulate precisely the evidentiary hypothesis by which a fact of consequence may be inferred from the evidence of other acts. *Kendall*, 766 F.2d at 1435. The district court must "identify specifically the permissible purpose for which such evidence is offered and the

inferences to be drawn therefrom." *United States v. Youts,* 229 F.3d 1312, 1317 (10th Cir.2000) (citing *Kendall,* 766 F.2d at 1436). The United States submits that evidence of the defendant's discharge of a firearm on the date close in time, is demonstrative of the defendant's motive, identity, knowledge, intent, or lack of mistake or accident in the charged offenses. The defendant's other acts are therefore, offered for a proper purpose.

      B.      Evidence is Relevant.

The Tenth Circuit has recognized the relevance of previous wrongs and crimes. *See Johnson*, 934 F.2d 936 (8th Cir. 1991) (When knowledge and intent are material issues concerning the offense charged, evidence of other acts tending to establish intent is generally admissible). A plea of not guilty requires the government to prove beyond a reasonable doubt each element of the offense charged. *See United States v. Gilmore*, 730 F.2d 550 (8th Cir. 1984). There must also be a clear and logical connection between the evidence and the case being tried. *United States v. Biswell*, 700 F.2d 1310, 1317-18 (10th Cir. 1983). "To determine the relevance of a prior bad act, the Court looks to the similarity of the prior act with the charged offense." *United States v. Brooks,* 736 F.3d 921, 940 (10th Cir.2013). The Tenth Circuit has identified "several non-exclusive factors" to consider: "(1) whether the acts occurred closely in time; (2) geographical proximity; (3) whether the charged offense and the other acts share similar physical elements; and (4) whether the charged offense and the other acts are part of a common scheme." *Davis,* 636 F.3d at 1298.

In this case, the other instance of the discharge of a firearm by the defendant is relevant as it is clearly and logically connected to the events charged. Each of the events occurred close in time, and each event occurred at the South Non-Profit Housing in Shiprock, New Mexico. While each event shares similar physical elements such as the defendant's actual possession and

discharge of the firearms, the United States does not contend that each event is a part of a common scheme. Instead, the United States submits that each event demonstrates the defendant's continuing course of conduct not too distant in time from the charged acts. *Biswell*, 700 F.2d at 1317-18. As the factors set forth in *Davis* were non-exclusive, the United States urges the Court to consider this fourth factor, as the proposed evidence shows defendant's motive, intent, identity, and lack of accident or mistake in the events underlying this case. Therefore, the prior bad acts serve as evidence of defendant's intent here.

C. Close in Time.

There is no absolute rule regarding how much time can separate the acts. The Tenth Circuit applies a reasonableness standard, examining the facts and circumstances of each case. *United States v. Cuch*, 842 F.2d 1173, 1178 (10th Cir. 1988); *United States v. Franklin*, 704 F.2d 1183, 1189 (10th Cir.), *cert. denied*, 464 U.S. 845 (1983).

The Tenth Circuit has recognized the probative value of other bad acts to show motive, intent, and knowledge, when the other bad acts are similar to the charged crime and sufficiently close in time. *See United States v. Olivo,* 80 F.3d 1466, 1468–69 (10th Cir.1996) (finding the district court did not abuse its discretion when it admitted evidence about an event over one year after a defendant's arrest); *United States v. Bonnett,* 877 F.2d 1450, 1461 (10th Cir.1989) (holding that evidence about events over a year after the charged conduct was not "too remote in time and unrelated to the transactions with which he was charged"). This similarity may be shown through "physical similarity of the acts or through the 'defendant's indulging himself in the same state of mind in the perpetration of both the extrinsic offense and charged offenses.' " *United States v. Queen,* 132 F.3d 991, 996 (4th Cir.1997) (quoting *United States v. Beechum,* 582 F.2d 898, 911 (5th Cir.1978)). *See Bonnett,* 877 F.2d at 1461 ("The closeness in time and

the similarity in conduct [are] matters left to the trial court, and [its] decision will not be reversed absent a showing of abuse of discretion."). The more similar the act or state of mind, the more relevant the evidence becomes. *See Queen,* 132 F.3d at 996. Moreover, when establishing probative value, although the uncharged crime must be similar to the charged offense if it is unrelated to the charged offense, it need not be identical. *See United States v. Gutierrez,* 696 F.2d 753, 755 (10th Cir.1982).

In this case, the other bad acts evidence occurred within two months of the instant offense. Under any standard, this two-month span is not too remote in time, and although not identical, the prior event bears a striking similarity to the acts charged in each indictment. In each instance, the defendant's state of mind is clear; he intended to discharge a firearm.

        D.      <u>Probative Value Not Substantially Outweighed by Potential for Unfair Prejudice</u>.

Finally, the admissibility of evidence of defendant's other bad acts substantially outweighs any danger of unfair prejudice to the defendant. Evidence is unfairly prejudicial if it makes a conviction more likely because it provokes an emotional response from the jury, or if the evidence otherwise tends to adversely affect the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged. *See United States v. Rodriguez,* 192 F.3d 946, 951 (10th Cir.1999). "Evidence is not unfairly prejudicial simply because it is damaging to an opponent's case." *United States v. Caraway,* 534 F.3d 1290, 1301 (10th Cir.2008) (quoting *United States v. Curtis,* 344 F.3d 1057, 1067 (10th Cir.2003)). Rather, "[t]o be *unfairly* prejudicial, the evidence must have 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'" *Caraway,* 534 F.3d at 1301 (quoting Fed.R.Evid. 403 advisory committee notes).

The probative value of the other bad acts evidence in this case is high, because the prior

9

discharge of a firearm is strikingly similar to the charged acts. The United States is required to prove defendant's motive, intent, identity, or absence of mistake or accident, which will likely be at issue here. Evidence of other acts wherein the defendant discharged a firearm is highly probative on the issue of intent and identity. In order to allay any concerns of potential prejudice, the court may instruct the jury on the proper use of other bad acts evidence.

### III. REBUTTAL EVIDENCE.

In the alternative, the United States requests it be allowed to introduce said evidence should the defendant attempt to raise any defense before this Court that challenges the defendant's identity, motive, opportunity, intent, or knowledge, or any defense which alleges a mistake or accident on the part of the defendant at any point during the proceedings. A defendant "cannot seek to exclude as irrelevant ... testimony regarding [the prior deliveries] after opening the door for the government." *United States v. Magallanez,* 408 F.3d 672, 678 (10th Cir.2005). Indeed, "[r]ebuttal evidence serves a legitimate purpose consistent with the exceptions listed in Rule 404. It allows a party to explain, repel, contradict or disprove an adversary's proof." *Id.* at 681 (internal quotation marks omitted). "Admission of rebuttal evidence, particularly when the defendant 'opens the door' to the subject matter, is within the sound discretion of the district court." *United States v. Burch,* 153 F.3d 1140, 1144 (10th Cir.1998). By opening the door, the defendant amplifies the probative value of the evidence.

WHEREFORE, for the forgoing reasons, the United States requests it be allowed to reference the defendant's other bad act of the discharge of a firearm in its case-in-chief. In the alternative, the United States requests it be allowed to reference the defendant's other bad act of the discharge of a firearm should the defendant attempt to challenge the defendant's identity, motive, opportunity, intent, or knowledge, or any defense which alleges a mistake or accident on

the part of the Defendant at any point during the proceedings.

                                                  Respectfully submitted,

                                                  DAMON P. MARTINEZ
                                                  United States Attorney

                                                  ***Electronically filed on 12/19/16***
                                                  ELAINE Y. RAMIREZ
                                                  RAQUEL RUIZ VELEZ
                                                  Assistant United States Attorneys
                                                   P.O. Box 607
                                                  Albuquerque, New Mexico 87103
                                                  (505) 346-7274

I HEREBY CERTIFY that on the 19th day of December, 2016, I filed the foregoing pleading electronically through the CM/ECF system, which caused counsel of record to be served by electronic means.

***Electronically filed on 12/19/16***
ELAINE Y. RAMIREZ
RAQUEL RUIZ VELEZ
Assistant United States Attorneys