**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                               CR 2016-2725 MCA

CHRISTIAN BEGAY,

        Defendant.

**RESPONSE TO UNITED STATE's**
**MOTION _IN LIMINE_ REGARDING 404 (b) EVIDENCE**

**COMES NOW** the Defendant CHRISTIAN BEGAY, by and through his attorney DANIEL J. TALLON, and files this response to the United States' Motion _In Limine_ Regarding 404 (b) Evidence.

**<u>INTRODUCTION</u>**

The United States seeks to "reference" in its case in chief Christian Begay's "previous conduct on March 9, 2016, when he discharged a firearm <u>at</u> the residence of Melvin Lee and Kristina Carrillo." ("March 9 event")

In the alternative, the United States seeks to introduce evidence of the same incident "should the defendant attempt to raise any defense… that challenges the defendant's identity, motive, opportunity, intent, or knowledge, or any defense which alleges a mistake or accident on the part of the defendant…at any point during the proceedings."

The "alternative" authorization relates to the United States' request to use evidence from the March 9, 2016 event as rebuttal evidence, in the event Christian Begay "opens the door" to that requested use.

The probative value of the March 9 event, which might be analogized to anonymous persons discharging guns into the air at midnight on New Year's, is substantially outweighed by the risk of unfair prejudice to the trial of Christian Begay on an indictment charging a May 21, 2016 intentional assault on a person with a deadly weapon, intentionally causing serious bodily harm to a person and committed through the purposeful discharge of a firearm.

In this case, the United States proceeds with the evidence of three eyewitnesses, who claim that Christian Begay shot Norman George. "Begay was identified by Rochelle Charley, June George and Norman George. Begay is the nephew of June George and the cousin of Norman George." (Doc. 31, page 4).

The United States' claims that the March 9, 2016 event is relevant evidence which is "not more prejudicial than probative" on the issue of "identity". Counsel argues that the eyewitness testimony of two persons who are relatives of Christian Begay should be considered as part of the balancing test applied by the Court in determining whether other circumstances of the March 9 event persuade the Court to permit its details to be admitted in evidence under Rule 404 (b).

Counsel recounts what he believes the United States might attempt to introduce about the March 9 event based on reports of that incident as contained in discovery provided by the United States to Mr. Begay. (Bates 66 – 80).

## MARCH 9, 2016 POSSESSION OF A FIREARM ARREST

On March 9, 2016, Christian Begay was arrested and charged with "possession of a firearm". The United States is not contending that Mr. Begay was convicted of that offense, a misdemeanor, and if he was, whether he was represented by counsel and whether there was any challenge to the facial content of the police reports set forth in Bates 66 – 80.

First, the United States relies substantially on its assertion that the March 9 event is

"clearly and logically connected" to the indicted event, stating first that "each event occurred at the South Nonprofit Housing in Shiprock, New Mexico." (Doc. 31, page 7).

The March 9 event is alleged to have begun at 1814 hours and concluded at 2248 hours, began within the unspecified boundaries of the South Nonprofit Housing. The course of events the United States seeks to use against Mr. Begay begins with the report of "two male subjects both native shorthair" leaving the South Nonprofit Housing toward Highway 491 in an older model Jeep Cherokee. (The following sequence of events and their timing is found in or paraphrased from Shiprock Police Department 911 operator/dispatcher's notes set forth in Bates 70 – 75.) There is a reference to a "weapon" but not "what type of weapon" or any manner of its use.

Ten minutes later, an officer checking the area reports that "kids are playing outside don't seem to be disturbed at all." Contacts with neighbors at 1830 hours result in the report that "they haven't seen or heard anything and haven't seen that vehicle."

At 1834 hours, 19 minutes after the "Jeep Cherokee" left the area, an officer spoke with a male individual who reported a "loud bang" at the South Nonprofit Apartments. That male does not specify the time of the "loud bang" or identify or associate the "loud bang" with any persons or vehicles. After 1834 hours, reporting of the March 9 event has nothing whatsoever to do with the South Nonprofit Housing location, eliminating the critical element of similarity of location of the March 9 event with the May 21 event.

At 1851 hours, the "suspect vehicle" is observed near a gas station some distance away. At 1859 hours, a female residing on "Second Lane North" reports two shots being fired. At 1901 hours, there is a report of "two male subjects inside the vehicle and heading towards Third Lane", although there is no indication that the shots are coming from the "suspect vehicle". The

vehicle is observed at the far end of Third Lane, at a location at or near the home of Melvin Lee. (NOTE: Melvin Lee is a relative of Mr. Begay's alibi witness, Kristina Carrillo. Ms. Carrillo was living at Melvin Lee's home in March 2016 and, after partially recovering from a severe lower leg and ankle fracture sustained on May 22, 2016, resumed living with him again in the summer 2016. Ms. Carrillo provides material assistance to Mr. Lee who is disabled due to age and the loss of his arm.)

Between 1901 hours in 1914 hours, other telephone reports variously say "sounds like they are raising hell with the old man"; "arguing with the old man"; "they are being stupid right now"; "they are torturing the guy"; and threatening to complain about police officers' dilatory response to the situation. From all indications, none of these persons are eyewitnesses to anything. There is no identification of who the "they" is.

Eventually, officers respond to Melvin Lee's house. Two males, Melvin Lee and Lydell Hogue are in his house. They exit the house at the order of officers. One female and Christian Begay are within the house. Mr. Begay hides and is removed by the officers.

Melvin Lee does not allege that he was threatened with or suffered any harm from either Christian Begay or Lydell Hogue. Although Mr. Lee observes Mr. Begay in possession of a firearm inside his home, there is no indication that Mr. Begay possessed a firearm at any time prior to his arrival at Mr. Lee's home.  At 2017 hours, a handgun is located in shortly thereafter and a "casing and one shell was collected".  Later, at 2054 hours, a bag of .40 caliber rounds found in the Jeep is seized and secured as evidence.

Narrative reports reveal that Melvin Lee resides at Third Lane North off Mesa Farm Road in Shiprock. There was an investigation of "a reported shooting in the Mesa Farm community". Melvin Lee reported that the unknown male (Lydell Hogue) had a pipe and Begay had a gun.

Begay appeared to be upset. The police arrived at Melvin Lee's house shortly after Lydell Hogue and Begay did. Begay yelled for everyone to hide from the police.

Melvin Lee told police that, earlier in the day, Begay came to his house looking for Kristina Carrillo and Begay had "pushed" Lee when Lee told Begay he did not know where Carrillo went. Lee reported that Lydell Hogue was driving the Jeep earlier in the day before the police arrived. (Incident report #1. Bates 76).

A separate police report (Incident report #2. Bates 77 – 78) is more specific about time. The author of the report focuses on the South Nonprofit Housing area only with reference to the 1815 hours – 1834 hours period.

This report states that there was a report of shots being fired on Mesa Farm Road "Second Lane North" (1859 hours). This reporting party was later interviewed. That reporting party was Boyd Smith, the brother-in-law of Norman George and brother of Rachelle Charley, two of the three purported eyewitnesses to the May 21, 2016 event.

At 2145 hours on March 9, officers obtained written statements from Boyd Smith and Raynorma Billie. Boyd Smith reported a March 9 argument with Christian Begay, but explained that, curiously, "he did not know what the argument was over" although "Christian was yelling at him." For an unknown reason, Christian wrapped a chain around his hand and allegedly advanced towards Smith; Smith picked up two rocks to defend himself. Begay allegedly stated "I'm going to come back with my gun" and this caused Smith to hide. Smith heard four gunshots. There are no witnesses to what Smith reported.

Boyd Smith also told the reporting officer that "he had a prior incident with Christian that involved a handgun." This pre—March 9, 2016 which raises a separate evidentiary question for the Court which is unrelated to the government's offer of March 9, 2016 evidence. If testifying,

there is a risk that Boyd Smith might "stray" into this area of pre—March 9 testimony.

Boyd Smith, although not a witness to any May 21, 2016 event, contributed pejorative information to that investigation, and was present at FBI Special Agent Lance Roundy's interview of Norman George just hours after Mr. George was shot at approximately 2259 hours, May 21, 2016.

A third police report (Incident report #3. Bates 79 – 80) begins with reporting at 1906 hours on March 9, 2016. (Bates 79 – 80). "The location of a reported shooter was at the Lee residence at Third Lane North off Mesa Farm Road in Shiprock," not at the South Nonprofit Housing. At 1859 hours, there were shots reported being fired "at a residence north of Mesa Farm Road off Second Lane" which is likely the home of reporting person Boyd Smith.

**Other Relevant Disclosures Are Required to Decide This Motion**

Christian Begay requests that the Court compel the United States to identify the witness, source, or other means by which it proposes to introduce the "other acts evidence". The question as to through whom or how the United States introduces its Rule 404 (b) should be part of the Court's analysis. For example, if Boyd Smith is the vehicle for introduction of this evidence, he is prejudiced because of his claim of a prior incident with Mr. Begay that allegedly involved a handgun and further prejudiced by his relationship to Norman George through his sister Rochelle Charley, spouse/significant other of Norman George

At 2145 hours on March 9, officers obtained written statements from Boyd Smith and Raynorma Billie. Neither written statement was provided to defense counsel in discovery in this case. If the statements exist, defense counsel would like to be provided with them and be permitted to make additional arguments to the Court as part of his challenge this motion.

Counsel is not aware whether there is any additional investigative information concerning

the March 9, 2016 incident or information concerning the Navajo tribal court's disposition, if any, of the weapons possession charge filed against Christian Begay. This information is also relevant to the court's analysis. Counsel requests that he be provided with this information.

## UNITED STATES v. DAVIS FACTORS

The four "nonexclusive" <u>Davis</u> factors are 1) whether the acts occurred closely in time; 2) geographical proximity; 3) whether the charged offense and the other acts share similar physical elements; and 4) whether the charged offense and the other acts are part of a common scheme. United States v. Davis, 636 F. 3d 1281, at 1298 (10th Cir. 2011).

The United States contends that the March 9 incident is relevant "other acts evidence" because it occurred 73 days prior to the May 21 incident; that in each incident, at the South Nonprofit Housing, Christian Begay "possessed" and "discharged" a firearm.

The United States claims – knowing and intentional discharge of a firearm; identity; other instances of defendant's possession of firearms, close in time – are admissible to show – motive, identity, knowledge, intent or lack of mistake or accident. "All of these theories" – motive, identity, knowledge, intent or lack of mistake or accident – are likely to be at issue in this case. (Bates page 5, bottom)

The United States "must articulate precisely the evidentiary hypothesis by which a fact of consequence may be inferred from the evidence of other acts." United States v. Kendall, 766 F.2d 1426 (10th Cir. 1985), cert. denied, 474 U. S. 1081 (1986). See Bates 6, bottom.

## LAW CONCERNING FEDERAL RULES OF EVIDENCE

Rule 401 of the Federal Rules of Evidence defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the

evidence." Rule 402 provides that "All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other statutory authority. Evidence which is not relevant is not admissible." Fed. R. Evid. 402. Rule 403 states that:

> Although relevant, evidence may be excluded if its probative value
> is substantially outweighed by the danger of unfair and prejudice,
> confusion of the issues, or misleading the jury, or by
> considerations of undue delay, waste of time, or needless
> presentation of cumulative evidence.
> Fed. R. Evid. 403.

### Identity

In every instance a court determines the admissibility of Rule 404 (b) other acts evidence, it should perform a Rule 401/Rule 403 balancing test. In this case, the United States' eyewitness testimony would appear to be overwhelming and unimpeachable. Three eyewitnesses, two of them relatives, claimed to have identified Christian Begay as the May 21, 2016 shooter.

For the Court to admit "evidence" which is not clear and convincing, concerning discharge of a firearm, not at a person, committed by one of at least two unidentified persons, neither of whom was charged with the act of "discharge" would be to risk undue prejudice of Christian Begay in the eyes of the jury and without a corresponding justification.

### Discharge of a Firearm

Although Melvin Lee observed Christian Begay possessing a firearm within his home, there is no witness who claims that Christian Begay "discharged" any firearm on March 9, 2016. It is at least equally likely that Lydell Hogue possessed and discharged the firearm ultimately found by police officers in Melvin Lee's home. The firearm was found under a couch cushion in the living room of Melvin Lee's home on Third Lane

There is not clear and convincing evidence that either Christian Begay or Lydell Hogue

"discharged" a firearm. This is a critical distinction. Christian Begay is charged with violating 18 U.S.C. §924 (c). Under the circumstances of this indictment, if convicted of a violation of §924 (c), the Court must impose a 10-year mandatory minimum sentence to run consecutively with any other criminal liability which arises from the May 21 event.

To conflate the suspicion of "discharge" of a firearm on March 9 by either one of two persons, Lydell Hogue or Begay, at a place and time remote from the person of Norman George and remote in place and time from house #1036, the home of June George at the South Nonprofit Housing, is to unfairly prejudice Christian Begay.

If the United States' eyewitnesses convince a jury of Mr. Begay's "identity", they are equally likely to also convinced that jury that Mr. Begay "discharged" a firearm. The March 9 event suggests circumstances which are too vague and unconvincing to avoid the risk of unfair prejudice to Christian Begay.

**Intent**

There is a significant distinction between intent to discharge a firearm at a human being and intent to discharge a firearm into the air. In addition to the absence of evidence of identity of the "March 9 shooter", there is the total absence of evidence of the intent of that "shooter" to discharge a firearm at a person. To ignore this significant qualitative distinction and to allow any evidence of "discharge" by an insufficiently identified person, creates a substantial risk of unfair prejudice to Christian Begay.

**Motive**

There is no motive apparent in the March 9 event, regardless of the identity of the shooter. The United States has not identified the motive of the "March 9 shooter" and the motive of the "May 21 shooter" nor presented facts which show a clear and logical connection between

the two.

Boyd Smith claims that he argued over an issue that Smith, curiously, does not know or refuses to identify. As a result of that argument, Christian Begay allegedly told Smith he would obtain possession of a gun. Mr. Smith does not claim to have ever seen Mr. Begay with a firearm on March 9.

On the other hand, if Boyd Smith believes that Mr. Begay was not held accountable for the March 9 incident, his presence and possible influence of Norman George at the time of Mr. George's early-morning May 22, 2016 interview by FBI Special Agent Lance Roundy should be evaluated as a factor in the Court's balancing test. As noted earlier, Mr. Smith is the brother of Rochelle Charley, and alleged eyewitness to the May 21 incident and a spouse/significant other to Norman George. There is not a "clear and logical connection" between the March 9 and the May 21 events.

### Proximity in Time

The United States' arguments and authority concerning "time" are primarily focused on whether "other acts" occurring <u>after</u> the indicted event, have a sufficiently reasonable relationship to the prior event. The United States fails to address whether 73 days prior is a reasonable period of time so as to justify introduction of remote other acts evidence.

The two events occurred 73 days apart; the first event only possibly started at the South Nonprofit Housing.  That location was a "location of interest" for only about 15 – 20 minutes from 1814/1815 hours through approximately 1834 hours. Thereafter, the South Nonprofit Housing had nothing to do with the later investigation of this event at another location several miles away, to the north and west of South Nonprofit Housing.

## REBUTTAL EVIDENCE

The United States attempts to broadly define the circumstances under which the Court, having excluded the proffered evidence on the United States' case in chief, might admit that evidence on rebuttal. The United States encourages the Court to permit it to do so "should the defendant attempt to raise any defense… that challenges… identity, motive, opportunity, intent, or knowledge, or any defense which alleges a mistake or accident on part of the defendant at any point during the proceedings.". (Doc. 31, page 10).

Christian Begay intends to present an alibi defense to the testimony of Kristina Carrillo. Every alibi defense is, in one sense, a challenge to the element of "identification", but not in the sense of challenging a victim's attempt to identify a person unknown to her.

An alibi defense is a denial of "being present" at the time and place of the offense. The United States should not be permitted to chill Christian Begay's right to present a trial defense by encouraging the Court to permit introduction of disparate and irrelevant circumstances of an unrelated incident.

The United States proffers the testimony of three eyewitnesses, two of whom claim to have prior familial knowledge/association with Christian Begay. To allow the United States to counter the defense of "not being present" suggests that the government, if it fails cleanly to prove its case through three eyewitnesses, it should have another, messier and imprecise option, the use of attenuated other act evidence. Having failed with its scalpel, should the United States be permitted to use an axe? To allow the United States do so would corrupt and prejudice the factfinder in this cause. The Court would disadvantage Christian Begay's right to present his defense: his "lack of presence" alibi defense, already faced with potentially overwhelming eyewitness testimony, would also be countered, from the March 9 event, by substantially less

reliable or "convincing" evidence of identity, discharge of a firearm, intent or motive. Finally, the United States fails to address the common scheme or plan which it infers may have underscored an association between the March 9 and May 21 events.

For all the above reasons, counsel respectfully requests that the Court deny the United States' proffer of Federal Rule 404 (b) evidence which it appears to intend to offer through witness Boyd Smith, or otherwise through the hearsay testimony of police officers and perhaps other unidentified individuals.

The most convincing "fact" arising from the March 9, 2016 incident is that, based upon police reports, Christian Begay appeared to be accused by Melvin Lee and found by an arresting officer, to be in constructive possession of a firearm within Melvin Lee's home. This one possibly reliable, but slender thread of "fact", exists in a garden of noxious weeds. Those weeds should not be introduced as a reliable component in the sum of evidence the United States has available to prove the essential elements of the crimes it has charged against Christian Begay.

**WHEREFORE,** the Christian Begay respectfully requests that the Court deny the United States' request to submit Rule 404 (b) other acts evidence on its case in chief; deny its request to submit such evidence as rebuttal evidence; or, in the alternative, conduct an evidentiary hearing to determine the merits of the United States' request; and grant such other and further relief as to the Court seems just.

Respectfully submitted,

Electronically filed December 19, 2016
_____
DANIEL J. TALLON
Attorney for Christian Begay
6 Placitas West Road
Placitas, NM 87043
505.867.1515; fax 867.9495

I hereby certify that a copy of the foregoing was electronically filed and thereby also delivered by electronic means to all counsel of record on the CM/ECF system on the 19th day of December 2016.

*Daniel J. Tallon*

_____

DANIEL J. TALLON